Alwood WARREN, Petitioner,

v.

Mr. Bruce E. MARION and the Attorney
General of the State of North
Carolina, Respondents.

No. 77–350–HC.

United States District Court,
E. D. North Carolina,
Raleigh Division.

Dec. 1, 1978.

Alwood Warren, pro se.

Richard N. League, Asst. Atty. Gen.,
North Carolina Dept. of Justice, Raleigh, N.
C., for respondents.

## ORDER

DUPREE, District Judge.

Alwood Warren, a North Carolina state
court prisoner, entered a plea of guilty to a
charge of armed robbery on June 23, 1975,
in the New Hanover County Superior
Court. Upon this plea, Judge Joshua S.
James sentenced him to a term of twelve to
fifteen years. His attorney at that time,
Mr. Jay Hockenbury, was privately re-
tained. No appeal was taken therefrom,
but on July 18, 1977, petitioner filed an
application for a writ of habeas corpus with
the above Superior Court alleging a broken
plea bargain. This application was denied
by the presiding judge and the North Caro-
lina Court of Appeals denied certiorari.

Petitioner alleges six violations of his
constitutional rights in the 28 U.S.C. § 2254
petition presently before the court: (a) he
was unaware after he confessed and en-
tered a plea of guilty that he could receive
anywhere from five to thirty years, and
believed a sentence of only five to seven
years would be imposed; (b) he was prom-

ised a five-to-seven-year sentence by his attorney in exchange for a confession; (c) his assistance of counsel was ineffective because of an unfulfilled promise as to sentence, his attorney's failure to make pre-trial discovery, and his attorney's telling him he could not appeal his guilty plea after sentencing; (d) he was denied his right to appeal; (e) his right against self-incrimination was violated because he confessed only in exchange for a five-to-seven-year sentence; and (f) he was promised a five-to-seven-year sentence for his confession and plea. Contentions (b), (c) and (d) encompass the same factual allegations and legal issues, as do (e) and (f). These will therefore be discussed as units within the same claim.

■ The court also agrees with respondents that contentions (b) through (f) were apparently not presented to the state courts for exhaustion of state remedies as required by Section 2254. Since these contentions turn on the same circumstances to be reviewed in contention (a), and because they are meritless, we accept the state's waiver of exhaustion in order to deal with petitioner's claim more efficiently. *Jenkins v. Fitzberger,* 440 F.2d 1188 (4th Cir. 1971).

■ Mr. Warren's first contention is controlled by the Supreme Court's decision in *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 736 (1977). There, the court acknowledged that the plea and sentencing proceeding record constitutes a formidable barrier to collaterally attacking a guilty plea, and its verity cannot be surmounted unless the defendant shows through specific factual allegations that his representations at the time of plea were the product of misunderstanding, duress or misrepresentation. 431 U.S. at 71–75, 97 S.Ct. 1621.

In our case, the transcript of plea signed by petitioner and the sentencing hearing record indicate that he was told he could receive up to thirty years upon a plea of guilty, and furthermore, was addressed by the court and told his answers to its questions were to be made under oath. Petitioner's responses were clear; he noted he was fully aware of the import of his guilty plea; and no promises or threats were made by anyone to induce the plea. Tr. pp. 3–5. Petitioner then was called to the stand by his attorney and proceeded to describe in detail his past history and the circumstances leading to, and surrounding, the crime in question. Tr. pp. 26–36.

To support his claim that he was the victim of a broken plea bargain, petitioner notes only that his attorney "promised" him a sentence of five to seven years if he pled guilty; was led to believe that answering the court's questions was only a "formality"; that he would receive only the promise[d] sentence of five to seven years; and he "believed" that his attorney had consulted with the solicitor and judge concerning his confession and guilty plea. He also notes that there were two witnesses to this alleged promise, Hampton Warren and Shirley Rouse. Although these statements parallel the requirements of *Blackledge,* they sorely lack the necessary specificity indicating what the terms of the promise were; when, where and by whom it had been made; and what, if anything, the witnesses to its communication would testify. In *Blackledge, supra,* 431 U.S. at pp. 75–76, 97 S.Ct. 1621 the prisoner provided such specificity.

On October 20, 1978, this court instructed petitioner to particularize his contentions along these exact lines or risk dismissal. More than twenty days have passed and the court has received no response to its explicit instructions.

It is also worthy of note that petitioner entered his guilty plea in June, 1975, some three and a half years after the Supreme Court decided *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which legitimatized plea bargaining. The plea also came during the period when North Carolina's legislature was expressly legitimating plea bargaining through its general statutes. N.C.G.S. § 15A–1021, and Official Commentary (1975), and *see State v. Chrisco,* 16 N.C.App. 157, 191 S.E.2d 399 (1972).

When measured against the transcript of plea, trial transcript, status of plea bargaining in June, 1975, and his failure to respond to the court's request for more specificity, petitioner's allegations of a broken plea bargain are so vague and conclusory that they cannot support a claim for relief. *Blackledge, supra; Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); and *Crawford v. United States,* 519 F.2d 347 (4th Cir. 1975).

The conclusion that petitioner's guilty plea was voluntarily and validly entered renders his contentions (e) and (f) meritless. If Mr. Warren defines "confession" as his guilty plea and the statements he made after entering such, it is not a basis for relief as discussed above. If he refers to incriminating statements made prior to trial, review of their constitutionality has been forfeited by his valid guilty plea. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Finally, his allegations concerning ineffective assistance of counsel are also meritless. Petitioner was certainly not misled as to the maximum sentence he could receive within the meaning of *Hammond v. United States,* 528 F.2d 15 (4th Cir. 1975), because the judge clearly told him what the maximum was, as did the transcript of plea which he signed. He has presented no facts which would evidence a "promise" from his attorney concerning the sentence upon plea; therefore his allegations amount, at best, to speculation by his attorney as to what his sentence would be if he entered a plea of guilty and testified in his own behalf. A bad guess by counsel as to what the judge will impose does not require vacation of sentence. *United States v. Futeral,* 539 F.2d 329 (4th Cir. 1975), and *Vanater v. Boles,* 377 F.2d 898 (4th Cir. 1967). Petitioner's contention that his attorney did not file a motion for discovery, and consequently did not provide adequate services, is belied by statements he made to the court concerning his attorney's services at page 4 of the trial transcript. Lastly, Attorney Hockenbury's advice that he could not appeal because he had entered a plea of guilty

was correct, N.C.G.S. § 15–180.2, and cannot be a ground for relief. In light of the foregoing discussion, petitioner has not shown that his attorney was ineffective. *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977).

Accordingly, respondents' motion is granted and the action is dismissed.

SO ORDERED.