# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
        Plaintiff,       )
                  )
    v.                 )     Crim I.D. No. 2303015450
                  )
CHRISTOPHER CACCAVONE,     )
        Defendant.      )

Submitted: February 10, 2025
Decided: May 9, 2025

## MEMORANDUM OPINION

### *On Defendant's Motion for Post Conviction Relief – DENIED*

Isaac Rank, Esquire, Deputy Attorney General, Wilmington, Delaware, *attorney for the State of Delaware*

Christopher Caccavone, *pro se*

**BRENNAN, J.**

1

## I.    RELEVANT FACTS & PROCEDURAL HISTORY

On June 20, 2023, Caccavone was Indicted on one (1) count of Carrying a Concealed Deadly Weapon (hereinafter "CCDW"), two (2) counts of Possession of a Firearm by a Person Prohibited, two (2) counts of Possession of Ammunition by a Person Prohibited, one (1) count of Possession of a Controlled Substance, and various traffic offenses.[1]  The charges against Caccavone resulted after officers with New Castle County Police Department observed a drug deal on March 27, 2023, in New Castle, Delaware.[2]   Following an on-scene investigation, Caccavone's vehicle was searched upon which officers recovered a Polymer 9mm firearm and ammunition concealed under the steering column, .27 grams of crack cocaine, a scale with suspected crack residue, a pipe, and pieces of firearms purchased from Ebay.[3]   Ultimately, Caccavone confessed to the officers that he was aware the firearm was concealed under his steering column.[4]

Caccavone's counsel (hereinafter "Counsel") filed a motion to suppress on October 4, 2023.[5]   Briefing was completed and a hearing on the motion was

---

[1] State v. Caccavone, Crim. I.D. No. 2303015450 Superior Court Criminal Docket Item (hereinafter "D.I.") 4.  A motion to dismiss filed on May 12, 2023 and was later ruled as moot upon his indictment.

[2] State v. Caccavone, Crim. I.D. No. 2303015450 Court of Common Pleas D.I. 3; *See* Prelim. Hr'g. Trans.; Superior Ct. Crim I.D. No. 2303015450, D.I. 2.

[3] *Id.*

[4] *Id.*

[5] D.I. 11.

2

scheduled for November 17, 2023.[6]   The hearing was ultimately mooted as Caccavone pled guilty to one count of CCDW at his final case review on November 6, 2023.[7]   The Court, upon finding that Caccavone's plea was knowing, voluntary, and intelligent, sentenced him to eight (8) years at supervision Level V suspended after three (3) years for twelve (12) months at Level III.[8]   Caccavone was sentenced to the jointly recommended plea that had been negotiated pursuant to the plea agreement.[9]

On March 7, 2024, Caccavone, *pro se*, filed his first motion for modification of his sentence pursuant to Superior Court Criminal Rule 35(b).[10]   In it, Caccavone requested his Level V time be suspended after either serving his agreed upon three years, or upon completion of the Level V Road to Recovery program.   Caccavone argued the hardship imposed on his family during his absence justified modifying his sentence.[11]   This motion was denied on March 18, 2024.[12]   In its denial, the Court explained that his motion was untimely and that the sentence imposed was the one Caccavone, himself, requested. "The plea agreement reached by the parties called

---

[6] D.I. 15.
[7] D.I. 17.
[8] Sentencing Order, D.I. 18.
[9] D.I. 17.
[10] Defendant's First Motion for Modification, D.I. 19.
[11] *Id.*
[12] D.I. 20.

for the exact sentence Mr. Caccavone received. The sentence was the result of a joint request of both the State & Defense."[13]

On June 25, 2024, Caccavone filed his second *pro se* motion for modification of sentence, again seeking to suspend his Level V time after successful completion of the Road To Recovery program.[14] Additionally, he argued his sentence was illegal because the "crime of CCDW only held up to a 2 year level 5 term of incarceration."[15] This motion was denied on July 24, 2024.[16] In denying the motion as untimely, repetitive and meritless, the Court noted his sentence was legal, as a maximum of 8 years at Level V can lawfully be imposed for the charge of CCDW.[17]

On September 20, 2024, Caccavone filed the instant *pro se* motion for postconviction relief under Superior Court Criminal Rule 61 (hereinafter "Rule 61 motion").[18] The Court interprets his motion to argue four grounds for relief.[19] While only one ground is entitled "Ineffectiveness of Counsel," the body of

---

[13] *Id.*
[14] Defendant's Second Motion for Modification, D.I. 21.
[15] *Id.*
[16] D.I. 22.
[17] *Id.*
[18] Defendant's Motion for Postconviction Relief, D.I. 23.
[19] Caccavone used the standard "form" motion for postconviction relief as provided by the Court. This form only allots space for three grounds of relief to be raised. In the form there is a section for movants to explain why the motion should not be barred from relief. In this section, Caccavone instead pled a fourth ground for relief. Giving Caccavone every benefit, this claim will be liberally read as both a standalone claim and, if any procedural bars apply, as his argument to avoid any such bar.

4

Caccavone's grounds all allege ineffectiveness claims and will be reviewed as such.[20]

At the Court's direction, Counsel filed an Affidavit in response to Caccavone's Rule 61 motion on September 27, 2024, denying all four of Caccavone's claims of ineffectiveness.[21] Thereafter, a further Scheduling Order was issued.[22] Pursuant to that Order, the State filed its Response in opposition on October 3, 2024.[23] Caccavone was given until February 10, 2025, to file a Reply.[24] To date, no Reply has been filed. This is the Court's Opinion **DENYING** his motion for postconviction relief.

## II.    STANDARD OF REVIEW

Before addressing the merits of a Rule 61 motion, the Court must first examine whether any of the Rule's procedural bars apply.[25] An applicable procedural bar precludes a reviewing court from addressing the merits of a Rule 61 claim. Procedural bars exist to "protect the procedural integrity" of the court rules.[26] A motion for postconviction relief can be procedurally barred as untimely, repetitive,

---

[20] D.I 23.
[21] D.I. 27.
[22] D.I. 28.
[23] D.I. 29.
[24] D.I. 28.
[25] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[26] *State v. Page*, 2009 WL 1141738, at *13 (Del. Super.).

for failing to raise a claim in the proceedings leading to the judgment of conviction, and for being formerly adjudicated.[27]

When considering the motion's substance, Caccavone carries the burden to show counsel's representation at trial fell below "an objective standard of reasonableness." If so, Caccavone must then show that is a "reasonable probability" that, but for counsel's alleged errors, the results of the proceedings would have been different.[28] In the context of a plea, Caccavone must show that but for counsel's deficiencies, he would not have pled and insisted on proceeding with trial.[29]

### III. ANALYSIS

There are no procedural bars under Rule 61(i) that preclude Caccavone's ineffective assistance of counsel claims. His sentence was imposed on November 6, 2023. Caccavone did not file a direct appeal, therefore, his conviction was final thirty (30) days later in December 2023. Rule 61(i)(1) affords a litigant one-year from the finality of a conviction to file a postconviction motion. Caccavone's postconviction motion was filed on September 20, 2024, and is timely.[30] As this is Caccavone's first motion for postconviction relief and he solely raises allegations regarding ineffectiveness of counsel, which cannot be raised on direct appeal, the

---

[27] Super. Ct. Crim. R. 61(i)(1)-(4).
[28] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[29] *Jamison v. State*, 2003 WL 21295908, at *2 (Del. June 3, 2003).
[30] D.I. 23.

6

procedural bars of Rule 61(i)(2)-(4) do not apply.[31]  Caccavone's motion will be reviewed on its merits.

Caccavone asserts Counsel was ineffective for: 1) failing to raise an "important argument" and "file motions that would have changed the course of the criminal case … [and] coerce[d] [him] into pleading guilty by telling him he better take this plea."; 2) coercing him and having "psychologically pressured [him] into pleading guilty," which he argues should invalidate his plea; 3) having a conflict of interest which "impeded on her [sic] work performance" and was "below the aBa [sic] standards."; and 4) failing to proceed to a suppression hearing where "every item obtained due to the illegal search and seizure would not have been used against [him]."[32]

Counsel's Affidavit denies all claims: "Contrary to Mr. Caccavone's statements, it was Mr. Caccavone who chose to enter his plea of guilty.  After discussing the pros and cons of rejecting the plea offer and moving forward with suppression and trial, Mr. Caccavone elected to accept an agreed upon three (3) year plea."[33]  Counsel avers there were no conflicts of interest, that Caccavone was the one who voluntarily signed the plea documents prior to entering his plea and that, "it was explained [] that if he accepted the State's plea offer, he would not have a

---

[31] *Hoskins v. State*, 103 A.3d 724, 729 (Del. 2014).
[32] D.I. 23.
[33] D.I. 27, p. 2.

7

suppression hearing and there would not be a trial. He understood this fact and elected to accept the State's offer to plead guilty."[34]

The State's opposition centers around Caccavone's election to plead guilty.[35] Citing to the fact that not only did Caccavone face a substantial amount of Level V incarceration should he have proceeded to trial, as well as the statements made when accepting his plea of guilt pursuant to Superior Court Criminal Rule 11, the State argues Caccavone has waived any right to challenge any pre-trial issues.[36]

At the time of Caccavone's plea, the following exchange occurred:

| THE COURT: | …Mr. Caccavone, did you hear the plea that was read into the record by the prosecutor? |
| [CACCAVONE]: | Yes, I did. |

…

| THE COURT: | Is that your signature on the bottom of each one of these [plea] forms? |
| [CACCAVONE]: | Yes, it is. |
| THE COURT: | And did you fill out these forms with [Counsel]? |
| [CACCAVONE]: | Yes, I did. |
| THE COURT: | And when you filled out these forms with [Counsel], did you do so truthfully? |
| [CACCAVONE]: | Yes, I did. |

---

[34] *Id.*, pp. 2-3.
[35] D.I. 29.
[36] *Id.*

8

THE COURT:          And have you been and will you continue to answer my questions truthfully this morning?

[CACCAVONE]:        Yes, I will.

THE COURT:          …And when you filled out these forms with [Counsel], did you have the opportunity to ask her any questions that you may have had about them?

[CACCAVONE]:        Yes, I did.

THE COURT:          …And in looking at the plea agreement that you have in front of you, is that your understanding of everything that you yourself are agreeing to?

[CACCAVONE]:        Yes, I am.

                                    …

THE COURT:          And has anyone threatened or forced you to enter into this guilty plea agreement?

[CACCAVONE]:        No.

                                    …

THE COURT:          Did you also go through your constitutional rights listed in one through seven on the top of that form that includes your constitutional rights to a trial that you are waiving by pleading guilty?

[CACCAVONE]:        Yes, I did.

THE COURT:          … And when you went through these rights with [Counsel], did you have the chance to ask her any questions about those rights you are waiving?

[CACCAVONE]:        Yes, I did.

THE COURT:          … Do you have any questions for me right now about the rights you are waiving?

9

[CACCAVONE]:     No, I do not.

THE COURT:       There's a box in the middle of that same form, and that tells us that the statutory penalty for the charge of carrying a concealed deadly weapon, which is a class D violent felony, is up to eight years at level five. So, regardless of what the guidelines call for [] up to two years at level five, or regardless of what the party's recommendation here is for three years at level five, do you understand that I have the ultimate legal authority to sentence you to eight years at level five today if I thought that was appropriate?

[CACCAVONE]:     Yes, I do.

                              …

THE COURT:       [Indicted CCDW charge was read.] Mr. Caccavone, do you understand that charge?

[CACCAVONE]:     Yes.

THE COURT:       And how to you plead to that charge?

[CACCAVONE]:     Guilty.

THE COURT:       Are you pleading guilty because you are in fact guilty of this crime?

CACCAVONE:       Yes.

                              …

THE COURT:       … Your attorney did mention that there's a pending motion to suppress here. We went through your constitutional rights. You told me you didn't have any other questions. [Counsel] told me that she explained to you that you no longer will be able to present the motion to suppress. Do you understand that?

[CACCAVONE]:     I understand.

10

THE COURT: And with that understanding, do you still wish to go forward with this plea?

[CACCAVONE]: Yes, Ma'am.

THE COURT: … Have you had the opportunity to fully talk with [Counsel] about the plea that's been offered to you?

[CACCAVONE]: Yes, I have.

THE COURT: … And do you understand that while [Counsel] may give you advice or recommend how – whether you should take the plea or not, or how to resolve your case, [Counsel] cannot make that decision for you.

[CACCAVONE]: I understand.

THE COURT: … And with that understanding is it your decision to plead guilty here today?

[CACCAVONE]: It is my decision.

…

THE COURT: All right. Mr. Caccavone, you – are you satisfied with [Counsel's] representation of you?

[CACCAVONE]: Yes, I am.

THE COURT: And do you feel that she has done all she could do in representing you on these charges?

[CACCAVONE]: Yes, I have.[37]

---

[37] D.I. 17.

Absent clear and convincing evidence to the contrary, Caccavone's statements at the plea colloquy indicating he was content with Counsel's representation and aware of the difficulty in revoking his guilty plea are binding.[38]

## A. GROUND ONE

Caccavone first alleges Counsel was ineffective for failing "to raise important argument[s] and file motions that would have changed the course of the criminal case," and further contends "[d]efense counsel coerce [sic] [M]r. Caccavone into pleading guilty by telling him he better take this plea."[39] Counsel's Affidavit denies both of Caccavone's allegations:

> [c]ontrary to Mr. Caccavone's statements, it was Mr. Caccavone who chose to enter his plea of guilty. After discussing the pros and cons of rejecting the plea offer and moving forward with suppression and trial, Mr. Caccavone elected to accept an agreed upon three (3) year plea deal.[40]

Nonetheless, Caccavone argues Counsel coerced him into pleading guilty. The record indicates otherwise. After discussing his case with Counsel, Caccavone made an informed decision to accept the plea offer.[41] He reviewed and signed the Plea Agreement, the Truth in Sentencing form, and the Immediate Sentencing

---

[38] *Somerville v. State*, 703 A.2d 629, 631-32 (Del. 1997).
[39] D.I. 23.
[40] D.I. 27.
[41] *Id.*

form.[42]  Caccavone's words in the plea colloquy show it was his own decision to enter into the plea.

Further, Caccavone offers only conclusory allegations that, had Counsel filed additional motions or made different arguments, he would not have pled guilty.  Bare assertions without factual support falls short of the concrete evidence required in postconviction motions.[43]  Caccavone "must make concrete allegations of actual prejudice and substantiate them" to successfully show there was a reasonable probability that the outcome would have been different.[44]  "A reasonable probability means a probability sufficient to undermine confidence in the outcome...."[45]  "The likelihood of a different result must be substantial[,] not just conceivable."[46] Caccavone has not made such a showing here; his Ground One is denied as meritless.

### B. GROUND TWO

Caccavone next asserts he was "coerced by [t]rial counsel, under duress, and psychologically pressured into pleading guilty."[47]  Counsel's Affidavit makes it clear that "Mr. Caccavone, himself, elected to accept the State's plea offer.  After reviewing the Plea Agreement, the Truth in Sentencing form, and the Immediate

---

[42] D.I. 17.
[43] *Purnell*, 106 A.2d at 342.
[44] *Dawson v. State*, 673 A.3d 1186, 1196 (Del. 1996).
[45] *Green v. State*, 238 A.2d 160, 174 (Del. 2020).
[46] *Swan v. State*, 248 A.3d 839, 859 (Del. 2021).
[47] D.I. 23.

Sentencing form with Counsel, Mr. Caccavone signed each document and entered his guilty plea with the Court."[48]   Once again, Caccavone is bound by his own words to the Court when entering his plea.  Before accepting Caccavone's guilty plea, the court must ensure several circumstances are present to protect a defendant from making a potentially irreversible error.[49]   Caccavone's statements during the colloquy are "presumed to be truthful," and create "a formidable barrier in any subsequent collateral proceedings."[50]   He is bound by his representations made at the time his plea was entered.[51]  By knowingly, intelligently, and voluntarily entering a guilty plea agreement, he waived the constitutional right to challenge any "alleged errors or defects preceding the entry of the plea."[52]

Caccavone received all required protections during his colloquy.  During the colloquy, he was specifically asked if anyone had threatened or forced him to enter his plea.  Caccavone responded "[n]o."[53]   Caccavone's own words evidence the

---

[48] D.I. 27.

[49] *Somerville*, 703 A.2d at 631-32 (requiring a trial judge to ensure (1) defendant understands nature of the charges and penalties and their waiver of trial and other constitutional rights, (2) the record reflects defendant's understanding, and (3) defendant was not forced, threatened, or promised anything in exchange for agreeing to the plea agreement).

[50] *Id.* (quoting *Blackledge v. Allison* 431 U.S. 63, 74 (1977)).

[51] *Miller v. State*, 840 A.2d 1229, 1231 (Del. 2003).

[52] *Id.* at 1232. (citing *Downer v. State*, 543 A.2d 309 (Del. 1988)).

[53] D.I. 17.

voluntariness of his guilty plea; he was not "coerced" or "psychologically" pressured into pleading guilty.[54] Caccavone's Ground Two is denied as meritless.

### C. GROUND THREE

Caccavone's third ground for relief references Counsel's alleged "personal family matters" that created a conflict of interest and "impeded on [Counsel's] work performance."[55] As a result, Caccavone argues Counsel's representations fell below the American Bar Association's (hereinafter "ABA") standards.[56] Counsel denies this claim, stating there were no conflicts in the case. Caccavone fails to provide support for this argument, nor does he cite the ABA standard to which he refers. Caccavone, who carries the burden in this motion, has not presented any evidence as to any purported "conflict of interest," or how any such conflict influenced Counsel's performance. Contrary to Caccavone's claims, once again, his statements to the Court at the time of his plea reflect his satisfaction with Counsel's representation.[57] Caccavone was presented with an opportunity to bring any issues to the Court at the time of his plea; instead, he expressed satisfaction with Counsel's representation.

---

[54] *See Selby v. State*, 100 A.3d 1021 (Table) (Del. 2013) (finding a plea voluntarily given when a defendant represented during the plea colloquy that no one threatened or forced him into accepting the plea agreement made during the plea colloquy).
[55] D.I. 23.
[56] *Id.*
[57] D.I. 17.

Having only presented a bald assertion without legal or factual support, the record is devoid of any evidence that a conflict existed. Caccavone has not met his burden to show either that Counsel's conduct fell below an objective standard of reasonableness. Nor has Caccavone shown that Counsel's supposed conflict changed the outcome of the proceedings in that he would not have pled guilty and proceeded to trial. Caccavone's Ground Three is denied as meritless.

### D. GROUND FOUR

Caccavone's final allegation contends Counsel should have proceeded to the suppression hearing, because "every item obtained due to the illegal search and seizure would not have been used against defendant."[58] Once again, Caccavone fails to articulate facts or case law to support his allegation. As discussed in detail above, the record demonstrates Caccavone was fully informed about the constitutional rights he voluntarily waived upon entering a guilty plea, including the right to challenge the constitutionality of the traffic stop. Caccavone was specifically questioned about his then-pending motion to suppress and stated he "understood" his guilty plea would be a waiver of his constitutional rights and that he would no longer be able to litigate the suppression motion.[59] Caccavone cannot now argue to

---

[58] D.I. 23.
[59] D.I. 17.

the contrary, let alone without any supporting evidence. As such, his Ground Four is denied as meritless.

## E. CONCLUSION

For the foregoing reasons, Caccavone's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

17