Once again we are confronted with a petition for post-conviction relief which has been resolved summarily based on conflicting affidavits. The sworn allegations are such that there appear to be genuine disputes as to material fact, requiring an evidentiary hearing. For that reason I dissent.
 I
As a basis for their contention that their guilty pleas were involuntary, Scrivner and Mowdy claimed that their lawyer had made promises to them regarding their incarceration which never came to fruition. They said that, despite the expressed sentencing recommendation from the State, their lawyer had assured them, "they would not serve more than 3 years, and they would remain at the county jail or a nearby Community Work Center, if they would also agree to testify for the State in the Rosemarie (sic) Hogan trial." Scrivner and Mowdy also made several other allegations of false promises by the lawyer. The petitioners attached a sworn letter from Martin Scrivner's mother dated February 15, 1991. The letter recounted the dealings Mrs. Scrivner had with Travis Vance, the attorney who represented defendants Martin Scrivner and Johnny Mowdy. In part, the letter said Travis Vance told Mrs. Scrivner during their initial meeting that "he was almost sure that Martin would get some `time', but that he, Travis Vance, could get the charge down to one count of accessory to aggravated assault. That would get the time down to five or ten years." The only other substantive discussion occurred after the two had entered their plea. The tenor of the affidavit was that the *Page 745 
attorneys would seek to have the two serve their time locally and were confident of that result but that it was not a certainty.
The State moved for summary judgment. In support of the motion, the State said:
 The State would show that Petitioners were advised of all their constitutional rights and all possible defenses to the charges. At no time were any promises or guarantees made to Petitioners regarding the outcome of the case if it went to trial or the time that Petitioners could actually be expected to serve if they plead guilty. . . .
 Furthermore, Petitioners stood before the Circuit Court of Warren County on August 9, 1990, and responded to the Court's questions concerning their constitutional rights in regard to entry of a guilty plea. The Court found no reason to stop the proceedings and no objection was voiced by either petitioner.
Id. The State buttressed its position with affidavits from Travis Vance and Richard Johnson, who worked with Vance as an associate during the period Vance represented Mowdy and Scrivner.Id. Vance stated in part in his affidavit:
 Sometime around May 29, 1989, I first discussed with Johnny Mowdy and Martin Scrivner, in the Warren County jail, the circumstances surrounding the six charges of aggravated assault that were lodged against these two and a third accused, Rosemary Hogan. . . .
 Subsequent to the first meeting with Mowdy and Scrivner, I had several more conversations with them and their family members relative to the charges. I advised them of the possibility of a conflict of interest in the event that the statement of either of them should conflict against the other. We also discussed the possibility of a lesser charge being in order and generally discussed the penalties applicable. I went to the Warren County jail with Mrs. Scrivner, Johnny's mother, and we talked openly about the charges and the possible consequences. We discussed all defenses available to the charges and possible witnesses to what had transpired. I never made any promise or guarantee as to what the ultimate outcome would be to the charges.
 . . . My investigation of this case was thorough and included several [more] conversations and discussions with Mowdy and Scrivner, their family members, the District Attorney, law enforcement personnel and other witnesses. After fully informed plea bargaining discussions with the District Attorney, he was prepared to recommend 25 years on a plea of guilty. This offer was fully and completely explained to Mowdy and Scrivner. At no time did I indicate or promise that they would only serve three (3) years on such a sentence or that they would remain at the Warren County jail indefinitely after sentence. In fact, they understood that I could make no such promise and that if they did plead guilty the Department of Corrections would make all decisions about service of their sentences. I made no threat to get them to enter their plea and I promised them nothing. Their plea was of their own free and informed volition.
Richard Johnson's affidavit corroborated Vance's representations. Johnson stated in part:
. . . During the course of my association with Vance, I was present on several occasions with him at the Warren County jail while he discussed the facts of the incident and the circumstances with Mowdy and Scrivner.
 Vance advised them that if either should have a statement that might conflict with the other, then he would have a conflict of interest and could not represent them both. I know of no such circumstance and Vance was employed to represent them in this matter. The facts of the incident were discussed at length on several occasions and Vance informed Mowdy and Scrivner of all their constitutional rights and all possible defenses to the charges and all possible lesser included charges . . .
 At no time do I recall hearing Vance make any promise or guarantee regarding the outcome of the case if it went to trial or the time that they could actually be expected to serve if they plead guilty. I remember that Mowdy and Scrivner would be *Page 746 
called as a witness against Hogan and that Vance would see if they could remain in the Warren County jail as long as possible.
The Warren County Circuit Court entered summary judgment in favor of the State. The court expressed the opinion that it saw no "genuine issue of material fact" after considering Mowdy's and Scrivner's motion to vacate their pleas and the State's response. The court gave special note to the fact that both Mowdy and Scrivner had said to that very same court under oath that their guilty pleas were being rendered intelligently and voluntarily and that they were not induced by any threats or promises by their attorney or anyone else. Mowdy and Scrivner thereafter perfected an appeal to this court.
 II
Miss. Code Ann. § 99-39-19(2) (Supp. 1992), vests the circuit courts of this State with the authority to grant motions for summary judgment in post conviction relief proceedings "when it appears from the record that there is no genuine issue ofmaterial fact and the movant is entitled to judgment as a matterof law." This standard is the same as that in Rule 56, Mississippi Rules of Civil Procedure.
 [T]he motion for a summary judgment challenges the very existence or legal sufficiency of the claim or defense to which it is addressed; in effect, the moving party takes the position that he is entitled to prevail as a matter of law because his opponent has no valid claim for relief or defense to the action, as the case may be.
 . . . [S]ummary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.
Miss. Rule Civ.Proc. 56, Comment. Here, in essence, Mowdy and Scrivner are claiming that genuine issues of material fact continued to exist after the State filed its pleadings. If they are correct in their assertions, it is axiomatic that the circuit court's issuance of summary judgment must be reversed and this case remanded for an evidentiary hearing to determine the legitimacy of Petitioners' claims that their guilty pleas were involuntarily entered.
 III
Mowdy and Scrivner assert that their guilty pleas were involuntarily entered, because they were based in part upon promises from their lawyer that were never fulfilled. As noted above, they claim their lawyer promised them that if they pleaded guilty they would not have to serve any more than three years in jail, even though they knew the State would recommend twenty-five years as the sentence for both of them. They also claim their lawyer told them they would serve their entire jail time either at a county jail or a nearby work center. Allegedly, these leniencies were to be provided to them in exchange for testimony against their co-defendant Rose Marie Hogan.[1] Regardless of the verity of these allegations, we know that such leniencies did not in fact take place. Mowdy and Scrivner are both at Parchman serving general twenty-five year terms. Pursuant to law, they are eligible for parole in six years and three months[2] and *Page 747 
eligible for good time release in approximately twelve years and six months.[3]
When Mowdy and Scrivner appeared to enter their guilty pleas, they were interrogated by the circuit court regarding the circumstance of their pleas. They were asked specifically, "Has anybody promised you anything in order to get you to plead guilty?", "Has your attorney made any threats or promises to you in this case?", and "Has anyone told you the Court would be lighter on you if you pleaded guilty?" Both Mowdy and Scrivner responded, "No, sir", to each question. They claim they responded that way, because they were advised by their counsel not to mention any of the aforementioned arrangements to the court. They allege their lawyer told them that despite their representations to the Court, "everything would be worked out", because the agreement was between them and the prosecution.
When the circuit court granted summary judgment to the State on this matter, it placed emphasis on the fact that appellants had represented under oath to the sentencing court that they had not been induced to plead guilty by promises from anyone. This Court has held on several occasions that unfulfilled promises or assurances by defense counsels may render involuntary guilty pleas based on such assurances. See Myers v. State,583 So.2d 174, 177 (Miss. 1991); Schmitt v. State, 560 So.2d 148, 152 (Miss. 1990); Sanders v. State, 440 So.2d 278, 283-84 (Miss. 1983). Sanders is the seminal case. In that case, the petitioner urged that he had pleaded guilty to two counts of aggravated assault based upon assurances from his counsel that he would receive consecutive, five-year sentences. 440 So.2d at 284. Williams was actually sentenced to two consecutive, seventeen year terms. Id. at 281. The Sanders Court observed:
 [C]ounsel's representation to the defendant that he will receive a specified minimal sentence may render a guilty plea involuntary. Mosher v. Lavallee, 491 F.2d 1346 (2d Cir.) cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). Where defense counsel lies to the defendant regarding the sentence he will receive, the plea may be subject to collateral attack. Where defense counsel advises the defendant to lie and the tell the court that the guilty plea has not been induced by promises of leniency (when in fact it has), the plea may be attacked. The law is clear that where the defendant receives any such advice of counsel, and relies on it, the plea has not been knowingly and intelligently made and is thus subject to attack. Burgin v. State, 522 S.W.2d 159 (Mo. App. 1975).
440 So.2d at 283-84. Additionally, in Baker v. State,358 So.2d 401, 403 (Miss. 1978), the Court expressed the position that a recitation of voluntariness by a defendant during a plea colloquy will not render that plea unchallengeable by subsequent, collateral attack. Specifically, the Court said:
 We agree with the spirit of Blackledge[4], e.g., that there should not be a per se rule prohibiting collateral attack on a plea in all circumstances, simply because the transcript on its face reflects recitation of voluntariness and awareness of the consequence.
358 So.2d at 403.
The majority attempts to distinguish Sanders by noting that here the trial court looked to the entire proceeding and treated the matter as a summary judgment. Majority opinion ante at p. 742. The fact is that that is precisely what was done inSanders where the trial court specifically referred to the transcript of the plea proceedings. 440 So.2d at 283. Except for the lawyer affidavits, the procedural posture is indistinguishable from Sanders. We dealt with competing affidavits in Harris v. State, 578 So.2d 617, 619 (Miss. 1991), and once again eschewed trial by affidavit.
We duty bound by the command that like cases be decide alike to apply the precepts established in Sanders to the question *Page 748 
whether Mowdy and Scrivner have indicated sufficient evidence to create a genuine issue of material fact. Their affidavits state a version of Vance's assurances. Mrs. Scrivner's affidavit, offered in support, provides little. She was not privy to the conversation leading to the agreement to plead guilty. Indeed she complains about her exclusion. As she relates the conversation that she had with the attorneys after the fact, she corroborates only that there was discussion of serving the time in the local community work center. Her affidavit, however, indicates that this was a goal likely to be obtained, not a promise.
The two attorneys swear by affidavit that they made no promise. The issue then is whether the sworn testimony of Mowdy and Scrivner is such that we can say that their affidavits are a sham. They denied that any promise was made. They also stood silent when the sentencing judge, prior to imposing sentence, referred to "once you get to Parchman", belying their contention that they expected to serve at the county jail or community work center.
Still, they contend that their lawyer told them to lie, that the community work center agreement was between him (their lawyer) and the prosecutor. Nowhere in the guilty plea colloquy were they advised that the question of where they served was for the department of corrections, not the prosecutor, and that no one could make them any assurances concerning parole or other matters. Under the circumstances I am more comfortable with findings of fact made on the basis of a full evidentiary hearing as opposed to the majority sanctioned trial by affidavit.[5]
 CONCLUSION
For the foregoing reasons, I would reverse the judgment of the circuit court and remand this matter to the circuit court for an evidentiary hearing.
SULLIVAN, PITTMAN and McRAE, JJ., join this dissent.
[1] There is no indication in the record regarding whether Mowdy and Scrivner ever testified against Rose Marie Hogan. The assumption made by the majority that the two did not keep their end of the alleged bargain, however, is unwarranted. Majority opinion ante at p. 743. It is possible that they did in fact testify against Rose. It is also possible that Rose entered a plea or that her case was otherwise disposed of so that the testimony was not needed even though these defendants stood ready. The point is, it is useless to speculate or to reach unwarranted assumptions when the facts can be established at a hearing.
[2] Six years and three months is one fourth of twenty-five years, and § 47-7-3(1) of the Code makes prisoners generally eligible for parole after serving one-fourth of their sentences.See Miss. Code Ann. 47-7-3(1) (Supp. 1992).
[3] Twelve years and six months is one half of twenty-five years, and § 47-5-138(1) of the Mississippi Code provides, "An inmate shall be eligible to receive an earned time allowance of one-half (1/2) of the period of confinement imposed by the court except those inmates excluded by law." Miss. Code Ann. §47-5-138(1) (Supp. 1992).
[4] Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1976).
[5] This does not mean that the defendants should be allowed to "slip out" of their pleas as the majority fears. It only means that they should be given an opportunity to support their claim concerning what they were told, to explain, if they can, their prior statements, and to confront their attorneys who indicate contrary testimony. If their evidence is credited the court may find reason to set aside their pleas. If it is not credited their pleas will remain intact. Should there be evidence of perjury they may be charged and tried for that offense as well. Myers v.State, 583 So.2d 174, 178 (Miss. 1991). *Page 1252