# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                      )
                                      )      Crim I.D. No. 1907011073
v.                               )
                                      )
FERNANDO GARCIA,      )
                                      )
      Defendant.        )

Date Submitted:  November 27, 2024
Date Decided: February 26, 2025

## MEMORANDUM OPINION

*On Defendant's Motion for Post Conviction Relief* **– DENIED**

*On Counsel's Motion to Withdraw as Counsel* **– GRANTED**

*On Defendant's Motion to Strike* **- DENIED**

Diana Dunn, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *attorney for the State*

Joseph Hurley, Esquire, Wilmington, Delaware

Fernando Garcia, *pro se*

**BRENNAN, J.**

Fernando Garcia, having pled to one count of Rape in the Fourth Degree, is serving a six (6) year sentence. Following unsuccessful motions to modify his sentence, he has filed the instant motion for postconviction relief. The motion was filed *pro se* and in a related matter, his Counsel moved to withdraw from further representation of Garcia. The motion to withdraw is GRANTED, and because Counsel's representation did not fall below an objective standard of reasonableness, the motion for postconviction relief is DENIED.

## I.    FACTUAL AND PROCEDURAL HISTORY

On October 28, 2019, Garcia was indicted on one count of Rape Second Degree and one charge of Rape Fourth Degree.[1] Garcia was charged following the immediate report from his teenage victim that he had forcibly engaged in oral sex while in the victim's home. Garcia was the maintenance worker in the victim's housing complex and had been trusted to enter the home for a repair without adult supervision. In May 2019, Garcia, 51 years of age, entered the house where the victim was alone. Garcia physically picked up, transported and placed the victim onto a couch in the basement where he forced himself upon the teenager. Garcia used his legs to pin down his victim, used his hands to force his victim's head in position and proceeded to forcibly engage in oral sex despite his victim's cries of

---

[1] D.I. 2.

"no" for "a little less than five minutes."[2]  Immediately after the attack, his victim wiped off with a towel, contacted a friend and called the police.  The towel and water bottle were turned over to the police for testing.

Upon arrival, the police met with the "hysterical" victim who reported the above account and identified Garcia.  The police contacted Garcia, who cooperated with authorities during the investigation.  Garcia denied the encounter and claimed the victim's entire account was fabricated.  Garcia continued to deny contact with his victim even after the DNA results concluded his biological fluids were a match to those from the victim's mouth.

Represented by Counsel, Garcia entered a *Robinson* plea[3] to one count of Rape Fourth Degree on February 28, 2022.[4]  During the colloquy in which the Court accepted the *Robinson* plea, Counsel put the following "factual foundations" on the record:

> …[T]he defendant was a maintenance person who worked for a townhouse for the owners.  And it was his duty to go to various homes in response to complaints of maintenance problems.  This particular customer…was an adult [who] resided there with her 17-year-old [victim].
> …
> [Defendant] went there on the day in question.  And the version that the State will present is that while he was there he scooped up the [victim] in his arms, and presented that person to a couch in a sitting position.

---

[2] D.I. 70, See Transcript of Plea Hearing, p. 5.
[3] Defendant thus conceded the State had sufficient evidence to prove his guilt beyond a reasonable doubt, without admitting his guilt for the offense.  *Robinson v. State*, 291 A.2d 279 (Del. 1972).
[4] D.I. 47 and 86.

And while that individual was proclaiming "no" that he put – straddled the individual and that he removed his private part and placed it into [the victim's] mouth, according to the 17-year-old, of that individual, which lasted about less than five minutes. At that point he removed himself from the premises.

The police were called in and very quickly knew who Mr. Garcia was obviously [sic] and contacted him. And he went into the police station, and he gave a statement at that time. He also provided buccal swabs pursuant to a search warrant. And buccal swabs were taken from the 17-year-old as well.

I have explained to him that having sexual relations with somebody under the age of 18, given the age of the defendant, even if there was a willing consent, is negated and it is still considered rape in the fourth degree.

The DNA results were nuclear. It demonstrated that DNA from the putative victim and on the private area of Mr. Garcia and it also indicated that the DNA associated with Mr. Garcia was found on the surface or in the mouth area of the victim….

I have explored the DNA situation in terms of margin of error. And I have talked to an expert in the field in the hopes that I would be able to enlist the aid of an expert witness to discredit the DNA as being the final word. I have explained to Mr. Garcia that the way the world is at this point, rightly or wrongly, DNA is irrefutable…. So I have told him flat out the chances of him being acquitted and having 12 people disregard DNA is zero…. Understanding all of these circumstances, understanding the incredible risk that he faces, he has elected to say that he will plead guilty to a charge which he maintains he did not do.[5]

Following this recitation and a full colloquy pursuant to Superior Court Rule 11, the guilty plea was accepted. The mutual request of the parties was for a full pre-sentence investigation to be ordered, and no particular sentencing recommendation

---

[5] D.I. 70, Tr.

was included.  This was discussed thoroughly with Garcia during his colloquy.  A pre-sentence investigation was, in fact, ordered.  In between the plea and sentencing, through Counsel, Garcia filed an unopposed motion to request additional testing of the DNA samples collected in the investigation.  Sentencing was continued three times while the new results were pending.[6]  Ultimately, the new testing corroborated the initial results provided by the State and confirmed the link between Garcia's DNA and the samples taken from the victim's mouth.[7]

Garcia was sentenced on April 14, 2023, to 15 years Level 5, suspended after 6 years for decreasing levels of probation.[8]  At the time of sentencing, the State recommended Garcia be sentenced to twenty-two (22) months at Level V incarceration.  Counsel did not make a specific recommendation as to the amount of unsuspended Level V time Garcia should serve, but highlighted the mitigators that applied in the case.  At the time of sentencing, the Court found the mitigator of lack of criminal history.  The mitigator of "acceptance of responsibility" was given the appropriate weight given the entrance of the *Robinson* plea and the continuous denial of committing this crime, which resulted in prolonging case resolution for further, futile, scientific testing.  Likewise, the aggravator of "Lack of Remorse" was not specifically found.  The aggravators of "Undue depreciation of the Offense" and

---

[6] D.I. 48, 50, 58, 64, 68.
[7] D.I. 86.
[8] D.I. 70 and 91.

"Need for Correctional Treatment" were found on the record, as well.[9]

On July 12, 2023, Garcia filed a *pro se* Motion for Modification of Sentence.[10] That motion was denied on July 18, 2023, as Garcia was still represented.[11] On August 21, 2023, through Counsel, Garcia filed a renewed Motion for Sentence Modification.[12] That motion was denied as both untimely and without merit.[13]

Garcia then filed the instant *pro se* Motion for Post-Conviction Relief (hereinafter "postconviction motion"), on March 15, 2024.[14] This motion raises three grounds for relief: (1) ineffective assistance of counsel; (2) suppression of favorable evidence; and (3) Sixth, Eighth, and Ninth Amendment violations.[15] Most of Garcia's arguments relate to Counsel's alleged ineffective assistance; however, Garcia includes a request for a modification of sentence, given Counsel's alleged errors. Notably, Garcia does not request to withdraw his plea. Instead, Garcia asserts Counsel failed to adequately explain the *Robinson* plea, present favorable evidence at Garcia's sentencing hearing, and to communicate regularly after sentencing such that Garcia could not have hired alternative counsel.[16]

On April 4, 2024, Counsel formally moved to withdraw as counsel for

---

[9] D.I. 70. *See* SENTAC Benchbook, pp.123-125.
[10] D.I. 76.
[11] D.I. 77.
[12] D.I. 78.
[13] D.I. 79.
[14] Garcia's Motion for Postconviction Relief, D.I. 81.
[15] *Id.*
[16] *Id.*

Garcia,[17] and on April 26, 2024, filed an Affidavit in response to Garcia's instant motion.[18] Counsel's Affidavit denies the entirety of Garcia's allegations. Specifically, Counsel articulates the thorough conversations he had with Garcia about the scientific and other evidence against him, as well as the implications of a *Robinson* plea considering the serious consequences of a guilty verdict at trial. Counsel describes certain evidence against Garcia as "nuclear"[19]and described the *Robinson* plea as an "excellent result, given what [Garcia] was facing."[20]

On June 6, 2024, Garcia moved to strike Counsel's Affidavit and Response on the basis of attorney-client privilege.[21] In this motion, Garcia reiterates the ineffective assistance of counsel claims asserted in his postconviction motion.

On July 30, 2024, the State responded in opposition to Garcia's motion, arguing Counsel's representation did not fall below an objective standard of reasonableness.[22] Alternatively, the State argued that even should the Court find Counsel's conduct unreasonable, Garcia fails to show how Counsel's conduct was sufficiently prejudicial or would have changed the outcome of the proceedings.[23]

---

[17] D.I. 84. Counsel's motion to withdraw was not made pursuant to Superior Court Criminal Rule 61(e)(7).

[18] Affidavit of Joseph Hurley, Esquire, D.I. 86.

[19] *Id.* Counsel described how the physical appearance of Garcia's genitalia matching the victim's description combined with the State's DNA analysis constituted "nuclear" evidence against Garcia.

[20] *Id.*

[21] D.I. 88.

[22] State's Response to Garcia's Motion, D.I. 91.

[23] *Id.*

Garcia filed his Reply on November 27, 2024.[24]  In it, he simply reasserts his ineffective assistance of counsel and constitutional violation claims and additionally challenges his treatment by the Department of Corrections (hereinafter "DOC") of a recent health condition that arose post-sentencing.[25]

## II.    STANDARD OF REVIEW

Before addressing the merits of a Rule 61 motion, the Court must examine whether any of the Rule's procedural bars apply.[26]  An applicable procedural bar precludes a reviewing court from addressing the merits of a Rule 61 claim, to "protect the procedural integrity" of the Court Rules.[27]  A motion for postconviction relief can be procedurally barred as untimely, repetitive, for failing to raise a claim in the proceedings leading to the judgment of conviction, and for being formerly adjudicated.[28]

Superior Court Criminal Rule 61(i)(1) precludes review of a motion for postconviction relief filed more than one year after the judgment of conviction is final.[29]  A defendant's conviction is final thirty days after this Court imposes its sentence, or when the Delaware Supreme Court issues a mandate or order where the

---

[24] Garcia's Reply, D.I. 94.
[25] *Id.*
[26] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[27] *State v. Page*, 2009 WL 1141738, at *13 (Del. Super.).
[28] Super. Ct. Crim. R. 61(i)(1)-(4).
[29] *Id.* at (1).

conviction was directly appealed.[30]  Garcia did not directly appeal his sentence imposed on April 14, 2023.[31]  His conviction became final thirty days later.  Garcia filed this postconviction motion on March 15, 2024, thus it is timely.[32]  This is Garcia's first postconviction motion, therefore it is likewise not barred as successive pursuant to Rule 61(i)(2).  Neither is his motion barred under Rule 61(i)(3) or (4), as Garcia did not file a direct appeal of his conviction.

To succeed on a claim of ineffective assistance of counsel, Garcia has the burden to show that counsel's representation at trial fell below "an objective standard of reasonableness" and that there is a "reasonable probability" that, but for counsel's alleged errors, the results of the proceedings would have been different.[33]  In the context of a plea, Garcia must show that but for counsel's deficiencies, he would not have pled and insisted on proceeding with trial.[34]

### III.  ANALYSIS

While not procedurally barred, the fact that Garcia pled via a *Robinson* plea is a consideration for the Court in its review of his motion.  Additionally, the unique request Garcia makes in this motion makes review somewhat unconventional.  Garcia is not seeking the traditional relief of vacating his plea based upon ineffective

---

[30] *Id.* at (1)-(2).
[31] D.I. 70 and 91.
[32] Super. Ct. Crim. R. 61(m)(1).
[33] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[34] *Jamison v. State*, 2003 WL 21295908, at *2 (Del. June 3, 2003).

assistance of counsel. And if that is the relief sought, it is neither mentioned specifically nor clear from the arguments he asserts. Garcia alleges ineffectiveness of counsel and affirmatively requests a modification of his sentence. Therefore, given the inconsistency between his request and the basis for the request, Garcia's postconviction motion will be afforded a liberal reading and will be reviewed for both whether his plea should be vacated and whether there should be a modification of his sentence based upon alleged ineffectiveness of counsel.

Garcia moves for relief citing three grounds. First, he alleges: "My attorney misled me on the plea deal and violated multiple [Delaware Lawyers Rules of Professional Conduct] standards. I assert that ineffective assistance of counsel significantly harmed my defense." Next Garcia alleges, "My attorney neglected to present crucial evidence that could have bolstered my defense. This evidence includes medical records, conflict of interests, & timestamps [sic]." Finally, Garcia raises violations of his Sixth (6th), Eight (8th) and Ninth (9th) Amendment rights, and states: "My attorney's failure to fulfill due diligence obstructed my ability to seek legal assistance…."[35]

## A. GROUND ONE

Garcia claims Counsel misled him into accepting the plea offered. The State opposes and Counsel, in his Affidavit, presented evidence to refute this claim.

---

[35] D.I. 81, p.3.

However, in reviewing this allegation, the words of Garcia in his plea colloquy are poignant. Specifically, a review of the plea hearing not only belies the claims raised by Garcia in his postconviction motion regarding Counsel's ineffectiveness, but also bolsters the finding that he made a knowing, intelligent and voluntary waiver of his rights. Prior to the plea even being presented to the Court, Garcia was questioned about his relationship with counsel due to counsel presenting ill that day before the Court:

> THE COURT: Mr. Garcia, I'm going to ask you that question also, because your attorney is a little bit weakened today, his condition. Are you satisfied with your attorney and the conversations you've had with him today, and do you feel that he is adequately representing you today?
>
> [GARCIA]: Yes, ma'am, I do.[36]

Garcia was further questioned following the reading of the plea and told the Court that he was educated to the point of "some college" and had not been taking any medication that would affect his ability to think clearly or understand the proceedings. Further, Garcia was specifically questioned as follows:

> THE COURT: Did you freely and voluntarily decide to plead guilty to the charge that's listed in the written plea agreement?
>
> [GARCIA]: Yes, ma'am.
>
> THE COURT: Are you pleading guilty because you are – you're

---

[36] *See* Trans. Plea. Colloquy (unnumbered).

taking a *Robinson* plea. All right. Did you read and understand all of the information in the paperwork connected with your plea?

[GARCIA]: Yes, ma'am.

THE COURT: Did you sign the paperwork?

[GARCIA]: Yes, ma'am.

THE COURT: Were your answers truthful?

[GARCIA]: Yes, ma'am.

THE COURT: Did anyone promise you anything to get you to take the plea?

[GARCIA]: No, ma'am.

THE COURT: Did anyone threaten you or force you to get you to take this plea?

[GARCIA]: No, ma'am.

THE COURT: Did anyone coerce you or intimidate you to get you to take this plea?

[GARCIA]: No ma'am.

…

THE COURT: Do you also understand that because you're pleading guilty you give up certain constitutional rights connected with your trial?

[GARCIA]: Yes, ma'am.

…

THE COURT: Did you have enough time to discuss the charges in this case with your lawyer?

[GARCIA]: Yes, ma'am.

…

THE COURT: Did you have enough time to discuss whether there are any possible defense to the charges?

[GARCIA]: Yes, ma'am.

THE COURT: And did you have enough time to discuss the consequences of taking this plea?

[GARCIA]: Yes, ma'am.

…

THE COURT: Having had these discussion with your attorney, is it still your decision to enter a *Robinson* plea?

[GARCIA]: Yes, ma'am.

…

THE COURT: There is no minimum mandatory penalty. Did anyone promise you what your sentence will be?

[GARCIA]: No, ma'am.

THE COURT: There's no recommendation at this point. You will have a presentence investigation. Do you understand that when the State gives a recommendation at your sentencing, that will only be a recommendation and the Court does not have to follow that recommendation?

[GARCIA]: Yes, ma'am.

THE COURT: And do you understand that you could be sentenced above the sentencing guidelines?

[GARCIA]: Yes, ma'am.

THE COURT: Do you also understand if the Court does not follow

|  |  | the recommendation that does not give you the right to withdraw your plea? |
| --- | --- | --- |
| [GARCIA]: | Yes, ma'am. | |

…

| THE COURT: | Are you satisfied with your lawyer's representation of you? |
| --- | --- |
| [GARCIA]: | Yes, ma'am. |
| THE COURT: | Are you satisfied that [Counsel] has represented you diligently? |
| [GARCIA]: | Yes, ma'am. |
| THE COURT: | Do you have any questions right now for [Counsel]? If you do, you can turn and talk to him privately. |
| [GARCIA]: | None at all.[37] |

Following that exchange, the Court found Garcia made a knowing, intelligent and voluntary entry of guilt via a *Robinson*, accepted the plea and ordered a presentence investigation.

Garcia's statements during the colloquy are "presumed to be truthful," and create "a formidable barrier in any subsequent collateral proceedings."[38] He is "bound by the representations […] made at the time the plea was entered."[39] By knowingly, intelligent, and voluntarily entering a guilty plea agreement, Garcia

---

[37] *Id.*

[38] *Sommerville v. State*, 703 A.2d 629, 631-32 (Del. 1997) (quoting *Blackledge v. Allison* 431 U.S. 63, 74 (1977)).

[39] *Miller v. State*, 840 A.2d 1229, 1231 (Del. 2003).

waived his constitutional right to challenge "alleged errors or defects preceding the entry of the plea."[40]

The record indicates Garcia received all required protections during his guilty plea colloquy given on February 28, 2022.[41] Also at the plea colloquy, Garcia signed the Truth-In-Sentencing Guilty Plea Form verifying that he knowingly, intelligently, and voluntarily entered his guilty plea.[42] By doing so, Garcia waived his right to challenge Counsel's alleged deficiencies and cannot sustain his burden showing counsel was ineffective.[43]

Further, Counsel's Affidavit corroborates Garcia's comments at the plea hearing, and details numerous discussions with Garcia regarding the case resolution. Garcia alleges, without support, that counsel violated "multiple DLRPC" standards, yet fails to specify which standards and fails to provide the basis for these claims. Garcia claims he was not fully advised on the consequences of his plea, but the record says differently. Garcia can neither show that Counsel's performance was deficient nor affected his decision to accept the plea in this matter. Garcia's plea colloquy reflected a knowing, intelligent and voluntary waiver of his rights, and evidenced a full understanding of the consequences of the plea, including the fact that he could be sentenced above the guidelines.

---

[40] *Id.* at 1232. (citing *Downer v. State*, 543 A.2d 309 (Del. 1988)).
[41] D.I. 47.
[42] *Id.*, Truth-in-Sentencing Guilty Plea Form dated February 28, 2022.
[43] *Miller*, 840 A.2d at 1232.

Further, Garcia fails to demonstrate either *Strickland* requirement.[44]  Garcia alleges Counsel failed to communicate about post-sentencing options, or to otherwise respond to him, which prevented him from hiring another attorney. Counsel's Affidavit explains how these allegations are factually incorrect.  Counsel advised Garcia there was no basis for appeal but communicated the possibility of a motion to reduce sentence.[45]  In fact, Counsel sent Garcia a draft motion to reduce sentence on February 24, 2022.[46]  The two communicated until Garcia fired counsel on October 14, 2023.[47]  None of the provided conversations suggest Garcia wished to hire a different lawyer.

The entirety of the record suggests that Garcia had conversations with Counsel who, after a careful consideration of the reality of the overwhelming evidence against him, opted to enter into a plea agreement with the State to resolve his charges. Garcia benefited from this plea agreement in that he no longer faced substantial mandatory time in prison.  Garcia has not shown that Counsel's representation fell below an objective standard of reasonableness, nor does he allege that but for Counsel's alleged errors, he would not have pled and insisted on proceeding with

---

[44] *See Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003) (explaining entirely conclusory allegations are legally insufficient to prove ineffective, and movant must assert and substantiate concrete allegations of actual prejudice).

[45] D.I. 86.

[46] *Id.*

[47] *Id.* at Exhibit B.

trial.[48]  In fact, the only claim Garcia makes is with respect to sentencing.  Garcia's

ground one fails.

## B.  Ground Two

Garcia's second ground for postconviction relief alleges Counsel was

ineffective for failing to present "crucial evidence" that could have bolstered his

defense including medical records, evidence of a "conflict of interest," and "time

stamp" information, all of which he claims would have helped his case.

## 1.  Medical Records

Garcia's motion attaches medical records he feels Counsel should have

presented either to the Court or to the prosecution; it is unclear.  Counsel's Affidavit

addresses the futility of presenting these records as mitigation.  Even if Garcia hadn't

waived his challenges to any pre-trial presentation of mitigation, or evidence

challenges by his plea, these medical records do not mitigate the evidence against

him nor contain anything that would have changed the outcome at sentencing.  The

medical records attached appear to be from 2018, and show a diagnosis of "Diabetes

Mellitus, Type II, Uncontrolled," "Hypertension, Benign," "Obesity," "Erectile

Dysfunction," "Snoring," and CT results from his right shoulder that shows some

evidence of injury.[49]  Defendant makes no connection in his papers to the relevance

---

[48] *Jamison v. State*, 2003 WL 21295908, at *2.
[49] D.I. 81.

of these diagnoses, and while the erectile dysfunction seems to be highlighted in the papers, there is neither an argument with respect to its application, nor is there any follow up. The records appear to show blood work was ordered, but did not confirm a diagnosis unlike some of the other afflictions listed. In fact, on the final page of records presented where his "Health Issues" are listed, erectile disfunction is not listed.

The medical records do not contain any substantive information that would amount to a SENTAC mitigator, and they contain nothing to change the fact that Garcia raped a 17-year-old child in the sanctity of the child's home. Despite accepting a *Robinson* plea, Garcia failed to truly accept responsibility, even in the face of overwhelming evidence. Garcia continued to prolong the case by insisting on having the DNA evidence re-tested. Garcia could not have been surprised with the subsequent test results, which only proved to confirm the original testing. While the legal strategy in accepting the *Robinson* plea was understood by the Court, the lack of responsibility was also recognized.

The aggravators far outweighed the mitigating circumstances presented at sentencing and continue to outweigh them, even considering the medical records presented. Garcia has not shown Counsel's failure to present these records was defective performance, and he cannot show that even it if was – which it wasn't – that the outcome of his proceeding would have been different. To the extent that

Garcia's postconviction motion is requesting a modification of sentence based upon the presentation of these medical records – even assuming this is the proper forum for such a request, which it is not – that request is likewise denied.

## 2. Remaining Documents: Conflict of Interest/Time Stamp

Garcia's filings reference other evidence of a conflict of interest and time stamp information. However, nothing of substance is contained in this argument, nor is anything attached to his motion in support of these claims. Garcia carries the burden in this motion and has failed to present any evidence as to what he references as "conflict of interest" evidence or "time stamp" information.

Without support, Garcia asserts the investigating police officer had a "documented history of questionable conduct and a potential personal bias."[50] Garcia alleges counsel was ineffective for failing to investigate this, which "deprived [him] of the opportunity to discredit key evidence and to undermine the prosecution's case…".[51] Not only are bald allegations insufficient,[52] but Garcia's plea waived any evidentiary challenges. As noted above, Garcia entered a knowing, intelligent and voluntary plea and waiver of his rights. Further, the scientific evidence was irrefutable, even in the face of Garcia's attempt to dispute it. More than that, the evidence of the immediate report, the victim's hysterical nature

---

[50] D.I. 94.
[51] *Id.*
[52] *Younger*, 580 A.2d at 555.

documented on the body camera footage and the victim's accurate biological description of Garcia corroborate the scientific findings. Counsel chose not to direct the sentencing judge's attention to medical records, alleged evidence of a conflict, or "the time stamps" Garcia references because, as Counsel aptly recognized, such efforts were futile.[53] This conduct does not fall below an objective standard of reasonableness, nor would it have affected the outcome of Garcia's proceedings.

## C. Ground Three

In Garcia's final ground for postconviction relief, he alleges multiple constitutional violations, namely of his Sixth, Eighth and Ninth Amendment rights. Each will be addressed in turn.

### 1. Sixth Amendment Violation Allegations

Garcia alleges Counsel failed to "fulfill [his] due diligence and provide effective representation" which "obstructed [him] from seeking assistance from another lawyer for all … legal rights, including appeal, modification, and post-conviction relief."[54] Under the guise of a *Strickland* and a constitutional analysis, Garcia's claims here fail.[55] Counsel's Affidavit makes clear that Garcia was advised there was no basis for appeal, but communicated the possibility of a motion seeking

---

[53] D.I. 86.
[54] D.I. 81.
[55] *See Zebroski*, 822 A.2d at 1043 (explaining entirely conclusory allegations are legally insufficient to prove ineffective, and movant must assert and substantiate concrete allegations of actual prejudice).

to reduce his sentence.[56]  As previously discussed, Counsel and Garcia had multiple communications post-sentencing regarding Garcia's options.

Counsel provided Garcia with instructions for how to communicate after sentencing.  While Counsel had previously contacted Garcia through Garcia's significant other, Wanda Silva, Garcia was informed by counsel that he would no longer communicate through Ms. Silva because she demonstrated disrespectful behavior towards him.[57]  Counsel specified he would only communicate with Garcia directly moving forward.[58]  Garcia's motion fails to identify any instance where counsel ignored contact from Garcia himself.  Such conduct is not objectively unreasonable nor is it violative of the Delaware Rules of Professional Conduct.  Given that Garcia still timely filed his Rule 61 motion, any alleged misconduct of Counsel did not affect the outcome of Garcia's proceedings.

Once again, Garcia's claims are mere bald assertions without legal or factual support.  As a result, he cannot sustain his burden to show either that Counsel's representation fell below an objective standard of reasonableness, and even if so, how it would have changed the outcome of the proceedings.  The detailed plea colloquy allays any fears that Garcia wasn't fully informed of his waiver of rights, and affirmatively shows Garcia was well represented and equally satisfied with

---

[56] D.I. 86.
[57] D.I. 86.
[58] *Id.*

counsel. Further, Counsel's Affidavit clarifies the post-resolution efforts made on behalf of Garcia. Any undesired outcome was not the fault of Counsel but is a matter of Garcia's own making because of the crime committed. No Sixth Amendment violations occurred.

## 2. Eighth Amendment Violation Allegations

In Garcia's opening motion for postconviction relief, he argues that his Eighth Amendment protection against cruel and unusual punishment was violated due to the length of his sentence. In Garcia's Response to the State's opposition to his motion, Garcia, for the first time, raises Eighth Amendment challenges to his treatment while incarcerated. To the extent Garcia is raising civil liability claims against the Department of Corrections ("DOC"), this motion is not the appropriate legal avenue for relief. Superior Court Criminal Rule 61 governs a qualifying person, "seeking to set aside a judgment of conviction on the ground that the Court lacked jurisdiction to enter the judgment or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction."[59] Any claim with respect to his treatment under DOC care will not be reviewed here.

Garcia's Eighth Amendment argument alleging a disproportionate sentence is barred by his plea. During his plea colloquy, the Court specifically explained to Garcia the sentencing recommendation is merely that, a recommendation. In fact,

---

[59] Super. Ct. Crim. R. 61.

the Court specifically questioned Garcia on his understanding that the sentencing judge would have discretion to sentence Garcia over the Truth-In-Sentencing guidelines regardless of the parties' recommendations. For Rape Fourth Degree, the statute permits a sentencing judge to impose up to 15 years at Level V incarceration.[60] The presumptive guidelines call for a range of 2-5 years at Level V.

Garcia was ultimately sentenced to 15 years of Level V suspended after 6 years for decreasing levels of probation. At the time of sentencing, the Court found both mitigating and aggravating circumstances. Garcia's sentence is within the statutory framework and thus legal; and at the time of sentencing, the Court put on the record the reasons for its departure from the presumptive sentence set forth in the SENTAC guidelines. SENTAC is a guideline to the Court and while it provides recommendations and best practices for most situations, it is not binding and the Court retains the legal authority to sentence a particular criminal defendant within the bounds of the statutory minimum and maximum time prescribed at Level V for any particular offense.[61] As such, no Eighth Amendment violation occurred.

### 3. Ninth Amendment Violation Allegations

Garcia raises a violation of his Ninth Amendment rights, but simply reiterates his claim that his sentence was overly harsh, without identifying which Ninth

---

[60] 11 *Del. C.* § 4205(3).
[61] *White v. State*, 243 A.3d 381 (Del. 2020).

Amendment violation is alleged to have occurred. Garcia has failed to meet his burden; this claim will not be considered.[62]

## IV. CONCLUSION

Whether Garcia is seeking to vacate his plea or a reduction of sentence, his postconviction motion is without merit. Garcia's Motion to Strike is **DENIED**; Garcia's sole basis to strike Counsel's Affidavit is violation of attorney-client privilege. By filing this postconviction motion and putting Counsel's decisions at issue before the Court, Garcia waived this privilege.[63] And for the reasons stated above, Defendant's Motion for Postconviction Relief is **DENIED**. Naturally, Counsel's Motion to Withdraw is **GRANTED**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

---

[62] *Younger*, 580 A.2d at 555.
[63] *State v. Appiah*, 2022 WL 357095, * 1 (Del. Super. Aug. 25, 2022); *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 80(1)(b) & cmt. C (2000) ("A client who contends that a lawyer's assistance was defective waives the privilege with respect to communications relevant to that contention. Waiver affords to interested parties fair opportunity to establish the facts underlying the claim.").