# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | Cr. ID. Nos. | 2212006162 |
| | ) | | 2303008901 |
| WILSON VELEZ, | ) | | |
| | ) | | |
| Defendant. | ) | | |

Submitted: July 3, 2025
Decided: September 12, 2025

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

William Leonard, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, Attorney for the State.

Wilson Velez, Chester County Prison, 501 S. Wawaset Road, West Chester, PA 19382.

Raymond Armstrong, Assistant Public Defender,
Office of Defense Services, Wilmington, Delaware, counsel for Defendant.

**O'CONNOR,** Commissioner

This 12th day of September, 2025, upon consideration of Defendant's *pro se* Motion for Postconviction Relief, Defendant's First and Second Amended *pro se* Motions for Postconviction Relief, defense counsel's Affidavit, Defendant's second Motion for Appointment of Postconviction Counsel, and the record in this matter, the following is my Report and Recommendation.

On September 27, 2024, Defendant Wilson Velez ("Defendant") filed a *pro se* Motion for Postconviction Relief after being sentenced in two Superior Court criminal cases.[1] Defendant's first case resulted from a shooting which he committed on October 19, 2022 at the Overtime Bar and Grill ("Overtime Bar") in Wilmington, Delaware. Video surveillance from the Overtime Bar revealed Defendant removed "a handgun from inside his black zipper jacket and [held] it with his right hand."[2] Just five seconds later, Defendant was observed on video surveillance firing at least two rounds at the victim, Andrew Brainard ("Brainard").[3] Defendant then fired a second shot in the direction of Brainard and a second victim, Marissa Stewart ("Stewart").[4] Defendant was observed on surveillance video chasing Stewart and Brainard outside of the bar, firing at least two more rounds in their direction.[5]

---

[1]  *State v. Wilson Velez,* Case No. 2212006162; *State v. Wilson Velez*, Case No. 2303008901.
[2]  *State v. Wilson Velez,* Case No. 2212006162, Docket Item ("D.I.") 1, Adult Complaint and Warrant, Ex. B, ¶ 6.
[3]  *Id.* Brainard was shot in the left shoulder. *Id.*
[4]  *Id.*
[5]  *Id.* at ¶ ¶ 6-7.

Defendant then fled the scene in a white Acura MDX.[6]  After investigating the shooting, the Delaware State Police obtained an arrest warrant for Defendant for Attempted Murder First Degree, Reckless Endangering First Degree, two counts of Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Carrying a Concealed Deadly Weapon.[7]

While in custody pending the above-referenced charges, Defendant accrued a second set of violent felony charges.  On March 14, 2023, Defendant was incarcerated at the Howard R. Young Correctional Institution in Wilmington, Delaware when he violently assaulted a correctional officer ("officer").[8]  More particularly, Defendant asked an officer to unlock the door to his cell.[9]  Because the officer had opened Defendant's door several times that day, he informed Defendant he had to wait until the officer arrived back at the control module so he could open the door.[10]  Defendant, offended that the officer did not immediately honor his demand to open his prison cell, engaged in a verbal altercation with the officer and struck him with a closed fist to the face.[11]  As the officer retreated, Defendant continued to punch the officer, eventually placing the officer in a chokehold.[12]

---

[6] *Id.* at ¶ 7.
[7] *Id.*
[8] *State v. Wilson Velez*, Case No. 2303008901, D.I. 1, Adult Complaint and Warrant, Ex. B.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

Responding officers attempted to break up the incident, but Defendant decided to resist and fight the other officers responding to the scene.[13] After being sprayed with "OC spray," Defendant was restrained and removed from the area.[14] Defendant was ultimately indicted for the felony offenses of Assault in a Detention Facility and Strangulation.[15]

On October 2, 2023, Defendant pled guilty to Assault First Degree (a lesser included offense of Attempted Murder First Degree); Reckless Endangering First Degree; Possession of a Deadly Weapon (Firearm) by a Person Prohibited; and Assault in a Detention Facility. A presentence investigation was ordered, and on January 12, 2024, this Court sentenced Defendant to an aggregate sentence of fifty-three years at Level V, suspended after serving sixteen years Level V, followed by probation supervision.[16] Defendant did not appeal the conviction or sentence.

On September 27, 2024, Defendant filed a *pro se* Motion for Postconviction Relief ("Motion").[17] In the Motion, Defendant raised several claims: (1) trial counsel provided ineffective representation by "lying to defendant about the terms of the plea agreement making Defendant believe he was pleading guilty in return for

---

[13] *Id.*

[14] *Id.*

[15] *State v. Wilson Velez*, Case No. 2303008901, D.I. 3, Indictment. Unless otherwise noted, docket item citations will reference the docket in Case No. 2212006162.

[16] D.I. 13, Sentence Order.

[17] D.I. 15. Motion for Postconviction Relief. On July 3, 2025, Defendant filed an Amended Motion for Postconviction Relief (D.I. 26).

3

a 9 year sentence;"[18] (2) the imposed sentence "clearly fell outside of the agreement of the guilty plea;"[19] and (3) the sentencing judge "abused his discretion by accepting the terms and agreement of [Defendant's] guilty plea and sentencing him outside of those terms and agreements."[20]

On December 23, 2024, Defendant filed an Amended *pro se* Motion for Postconviction Relief, duplicating the claims he raised in the initial postconviction filing,[21] but adding a claim that counsel was ineffective for failing to file a direct appeal of the conviction and sentence.[22]

On February 4, 2025, Defendant filed a second, repetitive Motion for Appointment of Postconviction Counsel.[23]

On July 3, 2025, Defendant filed a second Amended *pro se* Motion for Postconviction Relief[24] and a third Motion for Appointment of Postconviction Counsel.[25] In this amended postconviction motion, he asserts two additional ineffective assistance of counsel claims. First, he argues he came upon newly discovered information that "counsel withheld the search warrants from him," and

---

[18] *Id.*, p. 3.
[19] *Id.*
[20] *Id.*
[21] D.I. 26.
[22] *Id.*, p. 4. Defendant also raised this claim in the Second Amended Motion for Postconviction Relief. See D.I. 33, p. 3.
[23] D.I. 30.
[24] D.I. 33.
[25] D.I. 34.

second, he claims "counsel also withheld the arrest warrant in this case but advised Defendant that his arrest was based on the identification made by his parole officer."[26] Defendant contends counsel should have filed a motion to suppress identification of him as the shooter at the Overtime Bar by the Pennsylvania parole officer.[27] Defendant also appears to have withdrawn the claim that the Judge who sentenced him abused his discretion.[28]

## **DISCUSSION**

### I. MOTION FOR POSTCONVICTION RELIEF.

Superior Court Criminal Rule 61 provides an individual with a limited opportunity to seek postconviction relief.[29] The purpose of postconviction relief is "to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[30] Before considering the merits of any postconviction relief motion, this Court must first apply Rule 61's procedural bars. A motion for postconviction relief can be procedurally barred as untimely filed, repetitive, formerly adjudicated, or procedurally defaulted.[31] The bars to relief also do not apply to claims which are raised after a trial resulting in a conviction that (a)

---

[26] D.I. 33, ¶ IV.
[27] *Id.*
[28] D.I. 33, p. 5. ("As to Ground Three: Abuse of Discretion, [t]his [g]round is dropped in this [a]mendment.")
[29] *State v. Washington*, 2021 WL 5232259, at *4 (Del. Super. Nov. 9, 2021), *aff'd, Washington v. State,* 275 A.3d 1258 (Del. 2022).
[30] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[31] *Washington*, 2021 WL 5232259, at *4.

5

this Court lacked jurisdiction, or (b) that is pled with particularity that new evidence exists that creates a strong inference of actual innocence.[32]

### a. Procedural Bars

First, pursuant to Rule 61(i)(1), a motion for postconviction relief may not be filed more than one year after the judgment of conviction is final.[33] Here, the Defendant was sentenced on January 12, 2024, and filed a *pro se* Motion for Postconviction Relief on September 27, 2024. Because Defendant did not appeal his conviction or sentence, his conviction became final 30 days after this Court imposed sentence – February 11, 2024.[34] Defendant's Motion was timely filed.

Second, Rule 61(i)(2) prohibits the filing of repetitive motions for postconviction relief. As this is Defendant's first postconviction motion, this procedural bar does not apply.

Third, Rule 61(i)(3) prohibits the filing of "any ground for relief not asserted in the proceedings leading to the judgment of conviction . . . unless the movant shows (A) cause for relief from the procedural default, or (B) prejudice from a violation of the movant's rights."[35] Pursuant to Rule 61(i)(3), Defendant's second and third claims (that he was subject to an "illegal sentence" and the sentencing judge abused

---

[32] Super. Ct. Crim. R. 61(d)(2).
[33] Super. Ct. Crim. R. 61(i)(1).
[34] Super. Ct. Crim. R. 61(m)(1).
[35] Super. Ct. Crim. R. 61(i)(3).

his discretion in imposing sentence) are procedurally defaulted because Defendant did not assert them in the proceedings leading to the judgment of conviction, and he has not demonstrated cause for relief from the procedural default nor prejudice from an alleged violation of his rights. The above-referenced claims are procedurally defaulted.

Rule 61(i)(4) addresses formerly adjudicated claims – if a claim was formerly adjudicated, it is procedurally barred from being considering in a postconviction motion. As Defendant's claims were not previously raised in this prosecution, this procedural bar is inapplicable.

Finally, Rule 61(i)(5) allows a Defendant to avoid the application of the aforementioned procedural bars where a defendant claims this Court lacked jurisdiction, or to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i) or (ii).[36] Neither situation applies here.

### b. **Consideration of the Merit(s) of Defendant's claims.**

Defendant asserts, among other things, that trial counsel provided ineffective representation. In order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[36] Super. Ct. Crim. R. 61(i)(5).

7

different."[37] "The standard for judging counsel's representation is a most deferential one,"[38] and there is a strong presumption that counsel's legal representation was competent and falls within the "wide range" of reasonable professional assistance.[39]

The question for this Court is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.[40] As such, mere allegations of ineffective assistance are insufficient. A defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal.[41] Deference is given to defense counsel's judgment to promote stability in the process.[42]

To overcome the strong presumption that trial counsel provided competent representation, a defendant must demonstrate that "counsel failed to act reasonabl[y] considering all the circumstances" and that the alleged unreasonable performance prejudiced the defense.[43] The essential question is whether counsel made mistakes

---

[37] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[38] *Premo v. Moore,* 562 U.S. 115, 122 (2011).
[39] *Id. at* 122-23; *see also Flamer v. State*, 585 A.2d 736, 753-44 (Del. 1990) (citations omitted).
[40] *Id.* (citing *Strickland*, 466 U.S. at 690).
[41] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[42] *State v. Fithian,* 2016 WL 3131442 at * 3 (Del. Super. May 25, 2016) (citing *Premo*, 562 U.S. at 120-122).
[43] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).

8

so crucial that they were not functioning at the level guaranteed by the Sixth Amendment, thereby depriving defendant of a fair trial.[44]

Because a defendant must prove both parts of an ineffectiveness claim, this Court may dispose of a claim by first determining that the defendant cannot establish prejudice.[45] The first consideration in the "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected."[46] "It is not enough to 'show that the errors had some conceivable effect on the outcome of the proceeding.'"[47] Defendant must show a reasonable probability of a different result (*i.e.*, acquittal) but for trial counsel's alleged errors.[48] Applying these principles, each of Defendant's claims will be addressed below.

### 1. Counsel lied to Defendant about the plea agreement.

Defendant contends trial counsel lied to him "about the terms of the plea agreement, making Defendant believe he was pleading guilty in return for a nine-year sentence."[49] Neither the record nor the Affidavit of counsel support Defendant's claim.

---

[44] *Id.*
[45] *Strickland,* 466 U.S. at 697.
[46] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3rd Cir. 1992).
[47] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).
[48] *Strickland*, 466 U.S. at 695.
[49] D.I. 10, p. 3.

9

First, prior to entering the guilty plea, Defendant completed and signed the Truth-In-Sentencing Guilty Plea Form ("TIS Form").[50] On that form, Defendant acknowledged he freely and voluntarily decided to plead guilty to the charges listed in the written plea agreement.[51] He also acknowledged the minimum Level V sentence which this Court could impose was nine years, up to a maximum of fifty-three years.[52] Defendant affirmed he was not promised what the Court's sentence would be.[53] Finally, Defendant agreed that all answers provided on the TIS form were truthful.[54]

Second, Defendant executed the Plea Agreement with the assistance of counsel before entering the plea. The Plea Agreement reflects that the State was requesting a presentence investigation, and the State agreed to "cap its [sentence] recommendation of unsuspended Level V time at 15 years."[55] This language directly

---

[50] D.I. 12, p. 2.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] D.I. 6.
[55] *Id.* Also see D.I. 32, 3:3-13 ("Based on those guilty pleas [Defendant] faces a minimum mandatory of nine years in prison and as part of the agreement the State capped its recommendation of unsuspended Level V time 15 years. Your honor, considering the facts of this case after reviewing the pre-sentence investigation [and] considering the aggravating factors this is not [a] minimum mandatory case, and the State submits that the cap of 15 years at Level V is the appropriate sentence in this case.") And, during the plea colloquy, the State specifically informed the Court that it would cap its sentencing recommendation at 15 years imprisonment. D.I. 23: 3 – 10-20.

contradicts Defendant's claim that counsel negotiated a nine-year sentence with the State and told him he would receive a nine-year sentence.[56]

Finally, the transcript of Defendant's guilty plea reflects Defendant knowingly and voluntarily pled guilty to Assault First Degree; Reckless Endangering First Degree; Possession of a Firearm by a Person Prohibited; and Assault in a Detention Facility.[57] As to each offense, Defendant admitted he was pleading guilty because he in fact committed each offense.[58] Defendant also understood the aggregate sentence he faced was fifty-three years and was specifically acknowledged the sentencing judge would not be bound by any agreement of the parties as to the sentence which would be imposed.[59] Defendant acknowledged that no one promised him anything to enter into the plea agreement, and he was satisfied with counsel's representation.[60] Based on Defendant's

---

[56] *Id.*, 10:1-8. Trial counsel did argue that the Court impose the minimum mandatory eight year sentence, but this Court imposed a fifteen years Level V sentence, based on a finding of "aggravating factors, the need for correctional treatment, undue depreciation both of the shooting and the assault in a detention facility, . . . and the custody status at the time of the offense -- [Defendant] was on probation and parole in Pennsylvania."

[57] D.I. 23, 8:15 – 11:20.

[58] *Id.* Additionally, attached to counsel's Affidavit was a letter from Defendant where Defendant asked counsel to get him a plea to Assault First Degree, Reckless Endangering First Degree, and PDWBPP for the first set of charges, and an Assault charge for the prison incident. D.I. 24, Ex. A.

[59] D.I. 23, 6:12-23.

[60] *Id.,* 5:23 – 6:2; 8:8 – 11. A defendant's statements during a plea colloquy are presumed to be truthful. *State v. Smith*, 2024 WL 1577183, at *6 (Del. Super. Apr. 11, 2024), *citing Somerville v. State*, 703 A.2d 629, 632 (Del. 1997). And, a Defendant's representations to this Court during the plea colloquy create a "formidable barrier in any subsequent collateral proceedings." *Id.*, *quoting Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

representations on the TIS Form and the plea agreement, as well as the transcripts of the plea and sentencing hearings, Defendant's claim is meritless.

### 2. Counsel was ineffective for failing to object to the State's deviation from the plea agreement.

To the extent Defendant argues counsel failed to object to the State's deviation from the plea agreement, the record does not support this claim.[61] There is no record evidence supporting Defendant's assertion that counsel promised him he would receive an eight-year prison sentence, and no record evidence the State deviated from its fifteen year sentence recommendation. Defendant's claim is unsupported by the record and meritless.

### 3. Counsel was ineffective for withholding search and arrest warrants from the Defendant.

In Defendant's second amended *pro se* motion for postconviction relief, he raises two additional ineffective assistance of counsel claims.[62] First, he argues "counsel withheld the search warrants from [him] . . . but advised [him] that there was nothing defective in the warrants requiring pretrial relief."[63] He asserts the search warrant(s) lacked probable cause to search his Pennsylvania residence and any items seized from the execution of the warrant should be suppressed. Defendant

---

[61] Defendant raised this additional argument in the first Amended Motion for Postconviction Relief. See D.I. 26.
[62] D.I. 34.
[63] *Id.*, ¶ IV.

does not claim he reviewed the Pennsylvania search warrants, if any, or explained how a review the search warrants would have changed the outcome here.

Defendant has also failed to establish he was prejudiced by counsel's alleged misconduct. Defendant was observed and recorded on surveillance video inside and outside the Overtime Bar firing a handgun while being a Pennsylvania parolee and convicted felon, striking an unarmed victim inside the bar.[64] That compelling video-recorded evidence established Defendant's identity with and involvement in the shooting, and is independent of any evidence recovered from an alleged search of his residence. And, Defendant not only knowingly and voluntarily pled guilty to the shooting, he penned a letter to counsel prior to the entry of the plea effectively conceding his guilt while attempting to negotiate what he believed to be an acceptable prison sentence.[65] Counsel negotiated the plea Defendant indicated to the charges he would accept, albeit not with the sentence Defendant was amenable to serve.[66]

Defendant's second claim is equally unavailing. He contends counsel "withheld the arrest warrant in [the shooting at the Overtime Bar] case."[67] Defendant argues counsel informed him the relative quality of the surveillance video recording

---

[64] The execution of any search warrant in Pennsylvania would have no effect on Defendant's plea to Assault in a Detention Facility (Case No. 2303008901).

[65] D.I. 24, Ex. A.

[66] *Id.*

[67] *Id.* at ¶ IV.

was acceptable and that a plea was "the best option for him." Defendant now contends there was some defect in his identification, as his Pennsylvania parole officer was allegedly shown still images and/or the video footage of the incident which confirmed his participation in that crime. Defendant argues the "still pictures used for facial recognition" did not include his neck tattoo, and "through discovery of his active PA case it has been learned that his P.O. identified him because of his neck tattoo," but the "still pictures show no such features of the suspect." While Defendant's recitation is convoluted, he argues the Delaware State Police's decision to show his Pennsylvania parole officer these images was a "violation of the Constitution's First Amendment Due Process Clause" as it was "impermissibly suggestive to contact a parole agent, telling her a person on her caseload is a suspect in a shooting, requesting all of his personal information then later calling her again and showing her a video and pictures of a shooting and suspect they already told her was the Defendant."[68] Defendant argues counsel was ineffective for failing to seek suppression of this "suggestive out-of-court identification."

To the extent Defendant argues law enforcement's conduct violated his *First Amendment* rights, it did not. To the extent Defendant contends law enforcement violated his Fourth Amendment Due Process rights by showing a video and/or still images of a crime to his Pennsylvania parole officer asking whether they could

---

[68] *Id.*

14

confirm his identify as the shooter from the bar, he arguably raises a claim that the identification procedure was suggestive. But, as discussed below, that claim is meritless.

An identification procedure may be suggestive when police conduct directs a witness's attention to a particular individual as a suspect. Challenges to suggestive identification procedures commonly arise when the "suggestive identification involves a suggestion by police impressed upon a witness or victim to [specifically] identify a suspect."[69]

As the Delaware Supreme Court held in *Ruffin v. State*,

> An identification procedure will not pass constitutional muster where it is impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. To violate due process, the unnecessarily suggestive identification procedure must also carry with it the increased danger of an irreparable misidentification. Whether an out of court identification is impermissibly suggestive is a fact intensive inquiry. An identification procedure is suggestive when the police conduct it in such a way that the witness' attention is directed to a particular individual as the suspect upon whom the police have focused.[70]

Even if an identification procedure is suggestive, however, evidence of the identification will not be excluded from trial so long as the identification is reliable. To make this determination, Courts are directed to consider the totality of the

---

[69] Id. at 277.
[70] *Ruffin v. State*, 131 A.3d 295, 306 (Del. 2015) (internal citations omitted).

circumstances whether (a) the procedure used was unnecessarily suggestive, and (b) whether there was a substantial likelihood of misidentification.[71]

Here, Defendant's contention is not that a witness or victim to the shooting at the Overtime Bar identified him through a suggestive process. Defendant claims the Delaware State Police showed still images of him taken from the Overtime Bar's surveillance video to his Pennsylvania parole officer, who was actively supervising him on a conditional release sentence from Pennsylvania. Courts have held that when a witness, such as a parole officer, is sufficiently familiar with a suspect, any identification is considered "confirmatory" rather than "selective," minimizing due process concerns.[72]

Defendant's argument is somewhat consistent with the claim raised in *Weber v. State*,[73] where a police officer identified a defendant after reviewing gas station surveillance video footage the day after an attempted robbery at the gas station.[74] Here, and in *Weber*, the identification procedure was conducted by a law enforcement officer who was familiar with the defendant and was not subject to

---

[71] *Id.*

[72] See *People v. Gambale*, 158 A.D. 3d 1051, 1052-53 (NY App. 4th Div. 2018) ( a parole officer's identification of a defendant from surveillance video was merely confirmatory because the parole officer was familiar with him leaving little or no risk of misidentification.); *Greene v. State*, 229 A.3d 183, 192-93 (MD Ct. App. June 9, 2020) (The due process analysis that governs eyewitness identification procedures governs a process where the police seek to ascertain a suspect's identity. The police-initiated identification procedure utilized here was properly described not as a "selective identification" but rather, as a "confirmatory identification.")

[73] *Weber v. State*, 38 A.3d 271 (Del. 2012).

[74] *Id.* at 273.

pressure or necessity to identify anyone. The identification of Defendant by his parole officer was reliable, and the "distorting risk of suggestion" was negligible.[75]

Defendant has failed to demonstrate the Pennsylvania parole officer's identification was either impermissibly suggestive or unreliable, nor has he established the identification procedure carried with it an increased danger of irreparable misidentification. Defendant has failed to demonstrate counsel was ineffective for failing to file a motion to suppress his identification by the Pennsylvania parole officer.

### 4. This Court imposed an illegal sentence.

Defendant next claims his sentence was illegal because it "fell outside of the Agreement of the Guilty Plea." Not so. Under Delaware law, a sentence is "illegal" if it: exceeds statutorily-imposed limits, violates the Double Jeopardy Clause, is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute; is uncertain as to the substance of the sentence or is a sentence which the judgment of conviction did not authorize.[76] None of these circumstances apply here. As the record reflects, the sixteen-year sentence imposed by this Court was well within the statutory limits

---

[75] *Id.* Stated differently, the Pennsylvania parole officer's identification was confirmatory rather than selective, and Defendant failed to demonstrate a violation of due process.
[76] *Tatem v. State*, 787 A.2d 80, 81 (Del. 2001) (Identifying factors constituting an "illegal sentence" considered in the context of a motion for postconviction relief).

for the offenses to which he pled guilty, and as the Defendant acknowledged prior to the entry of the plea, the Court was not bound to sentence him by any agreement between the State and Defendant. Defendant's claim is meritless and factually unsupported by the record.[77]

### 5. Sentencing Judge abused his discretion.

Defendant alleged in the first[78] and First Amended[79] *pro se* Motions for Postconviction Relief that the sentencing judge abused his discretion by "accepting the terms and Agreement of [Defendant's] guilty plea and sentencing him outside of those terms and agreements."[80] While this Court imposed a sixteen-year Level V sentence, exceeding the State's "cap" by one year, it was not bound by the sentencing recommendation by the State or Defendant's counsel, and Defendant expressly acknowledged the Court could impose the maximum Level V sentence of fifty-three years if it saw fit to do so.[81]

---

[77] To the extent Defendant suggests the prosecutor attempted to mislead the Court and seek a sentence above the 15-year cap as agreed to in the plea agreement, the sentencing transcript refutes Defendant's claim. The prosecutor was steadfast that the State believed a 15-year sentence was appropriate. ("Your honor, considering the facts of this case after reviewing the presentence investigation and considering the aggravating factors this is not a minimum mandatory case, and the State submits that the cap of 15 years at Level V is the appropriate sentence in this case." (D.I. 23, 3:8-13); "The State submits, based on all of those aggravating factors and the facts of these cases, that 15 years at Level V time is appropriate." (*Id.*, 5:17-19)).

[78] D.I. 15, p. 3.

[79] D.I. 26, p. 3-4.

[80] D.I. 15, p. 3. As noted above in footnote 28, Defendant attempted to withdraw this claim in the second amended motion for postconviction relief. *See* D.I. 33, p. 5.

[81] D.I. 23, 6:12 – 23.

The sentencing judge imposed a sentence within the sentencing guidelines for the charges for which Defendant pled guilty, and the judge identified at least three aggravating factors supporting the decision to deviate from the sentence agreed to by the State and Defendant.[82] Given the existence of aggravating factors, deviating from the State's "cap" by one year is not evidence of an abuse of discretion. Defendant's claim is meritless.

### 6. Trial counsel was ineffective for failing to appeal Defendant's conviction and sentence.

Finally, in his second Amended Motion for Postconviction Relief, Defendant argues he asked counsel to appeal his conviction and sentence.[83] Counsel denies Defendant's claim, indicating Defendant neither verbally requested nor requested in writing he file an appeal.[84] And, if he had done so, counsel indicated he would have filed a "non-meritorious appeal."[85]

The record does not support Defendant's claim that counsel disregarded a request to file a direct appeal, and even if he did ask for an appeal, Defendant did not substantiate his claim by identifying any meritorious appellate issue.[86] As a result, Defendant cannot demonstrate prejudice.

---

[82] D.I. 32, 10:1 – 8.
[83] D.I. 26, p. 3.
[84] D.I. 24, p. 2.
[85] *Id.*, p. 3.
[86] A defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal. See *Younger*, 580 A.2d at 556.

### 7. By entering the plea, Defendant waived any alleged errors or defects committed by counsel.

The Delaware Supreme Court has "long held that a voluntary guilty plea constitutes a waiver of any alleged errors or defects occurring prior to the entry of [a] plea."[87]  In support of this legal standard, at the conclusion of Defendant's plea colloquy, after already confirming that Defendant was both satisfied with counsel[88] and that he was pleading guilty because he did, in fact, commit the four offenses to which he entered a plea of guilty,[89] this Court concluded:

> The Court finds the plea knowingly and voluntarily and intelligently made with an understanding of the nature of the charges and consequences.  The Court will accept your guilty plea and enter adjudications of guilty as to the charges of Assault First [Degree], Reckless Endangering First Degree, Possession of a Firearm by a Person Prohibited, and Assault in a Detention Facility.[90]

By entering a knowing, voluntary and intelligent plea, Defendant waived any alleged errors or defects of counsel prior to the entry of the plea, including all claims raised *supra*.

---

[87] *See Johnson v. State*, 2008 WL 4830853, at *1 (Del. Nov. 7, 2008), *citing Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003); *also see Alexander v. State*, 2008 WL 4809624 (Del. Nov. 5, 2008); *State v Charriez*, 2009 WL 806585, at *2 (Del Super Feb. 10, 2009) ("At least twice during the plea colloquy, the court warned Defendant that it would be virtually impossible to back out of the plea once it was accepted. Further, the court specifically asked if Defendant was satisfied with his attorney, and he was. If Defendant felt his attorney failed to properly represent him, he should have presented that issue in open court before he pleaded guilty. Because Defendant's ineffective assistance of counsel claims address matters before the plea, those claims were waived." *State v Charriez*, 2009 WL 806585, at *2 (Del. Super. Feb. 10, 2009)).

[88]  D.I. 23, 8:8-11.

[89]  *Id.*, 8:15 – 11:11.

[90]  D.I. 23, 11:12-20.

## II. MOTION FOR APPOINTMENT OF POSTCONVICTION COUNSEL.

On February 4, 2025, Defendant requested the appointment of postconviction counsel.[91] In the motion, Defendant alleged he was indigent, is not an attorney, is incarcerated in Pennsylvania, has no access to Delaware law, and appointed counsel would be better equipped to litigate postconviction claims on his behalf.[92] This Court denied Defendant's motion on May 12, 2025.[93]

On July 3, 2025, Defendant renewed his request for appointment of postconviction counsel.[94] He generally repeated the same reasons to request appointment of postconviction counsel that were previously submitted in the February 4, 2025 motion.

When considering a motion for the appointment of postconviction counsel in the context of a guilty plea, Rule 61(e)(3) provides:

> (3) *First postconviction motions in guilty plea cases.* The judge may appoint counsel for an indigent movant's first timely postconviction motion and request for appointment of counsel if the motion seeks to set aside a judgment of conviction that resulted from a plea of guilty or nolo contendere only if the judge determines that: (i) the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable; (ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or nolo contendere; (iii) granting the motion would result in vacatur of the judgment of conviction for which

---

[91] D.I. 30.
[92] *Id.*
[93] D.I. 31.
[94] D.I. 34.

the movant is in custody; and (iv) specific exceptional circumstances warrant the appointment of counsel.

The appointment of postconviction counsel in the context of a guilty plea is discretionary, and to grant the motion, this Court must conclude that all four factors in Superior Court Criminal Rule 61(e)(3) are satisfied. Here they are not.

Defendant has failed to set forth a substantial claim that he received ineffective assistance of counsel. During the plea colloquy, Defendant expressly stated he was satisfied with counsel's representation. His ineffective assistance of counsel claims noted *supra* are not supported by the record. And, as a result of this Court's finding that he knowingly, voluntarily and intelligently entered the guilty pleas, any claim related to conduct counsel failed to perform prior to the entry of the plea and sentencing is waived by operation of Delaware law. Defendant has also failed to establish the existence of exceptional circumstances which warrant the appointment of postconviction counsel.

## III. CONCLUSION

For the foregoing reasons, I recommend the claims raised in all of Defendant's pending *pro se* Motions for Postconviction Relief be **SUMMARILY DISMISSED** as procedurally barred and/or substantively meritless. I also recommend Defendant's second Motion for the Appointment of Postconviction Counsel[95] be **SUMMARILY DISMISSED**.

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
Commissioner Martin B. O'Connor

Cc:    Prothonotary
William Leonard, Deputy Attorney General
Wilson Velez

---

[95] D.I. 34.